# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

**Complaint for a Civil Case**

Case No._____

*(to be filled in by the Clerk's Office)*

**MADISON B. TURNER,**

       Plaintiff,

**v.**

**ILG TECHNOLOGIES LLC,**

**JOSEPH FIGO,**

**BARIS MISMAN,**

       Defendants.

_____/

## REQUEST FOR TRIAL BY JURY

Plaintiff requests trial by jury. ___Yes _X_ No

# I. PARTIES TO THIS COMPLAINT

**A.    Plaintiff**

Plaintiff's Name:                          MADISON B. TURNER
Address:                                       629 SW 9th Street #112
City, State, and Zip Code:            Gainesville, Florida 32601

**B.    Defendants**

Defendant's Name:                        ILG TECHNOLOGIES LLC
Address:                                       315 Ellis Blvd., Suite 102
City, State, and Zip Code:            Jefferson City, Missouri 65101

Defendant's Name:                        JOSEPH FIGO
Address:                                       12662 Riviera Heights Road
City, State, and Zip Code:            Holts Summit, Missouri 65043

Defendant's Name:                        BARIS MISMAN
Address:                                       1325 13th Street
City, State, and Zip Code:            Sarasota, Florida 34236-2503

## II. BASIS FOR JURISDICTION

Madison B. Turner, proceeding *pro se*, brings this case under 28 U.S.C.

1332(a). Plaintiff is a citizen of Florida, Defendant ILG Technologies LLC has a

principal place of business at 315 Ellis Blvd. Suite 102 Jefferson City, Missouri

65101; Defendant Joseph Figo is a citizen of Missouri; and, Defendant Baris

Misman is a citizen of the Republic of Turkey. The amount in dispute in this action

exceeds the sum of $75,000.00 exclusive of interest and costs. Diversity of

citizenship exists satisfying 28 U.S.C. § 1332(a) and venue is proper under 28

U.S.C. § 1391(b)(2).

## III. STATEMENT OF FACTS

1.      Defendant ILG Technologies LLC ("ILG") is a limited liability company that provides software for administering state bar examinations. Defendant Baris Misman ("Misman") is the founder and President of ILG. Defendant Joseph Figo ("Figo") is the Executive Vice President of ILG. (Hereby "Defendants").

2.      Madison B. Turner ("Plaintiff") grew up in a military family and has lived in New York, Kansas, Missouri, Tennessee, Georgia, Mississippi, and Florida. During her first two years of law school at the University of Mississippi School of Law ("Ole Miss Law"), Plaintiff carefully considered each of these seven states when making her decision regarding the state for which she would seek admission to the bar and practice law.

3.      During the Summer 2017 term of her 1L year, Plaintiff completed a volunteer legal internship in the United States Attorney's Office for the Southern District of Mississippi in Gulfport, Mississippi. During the Fall 2017 term of her 2L year, Plaintiff completed a legal externship in United States District Court in the Northern Division of Mississippi in Aberdeen, Mississippi. During the Spring 2018 term of her 2L year, Plaintiff completed a legal externship for the Department of Homeland Security in Memphis, Tennessee.

4. During the Spring 2018 term of her 2L year, Plaintiff decided she would take the Florida Bar Examination and seek federal employment in Florida. Plaintiff left Ole Miss Law in May 2018 to spend her 3L year at Florida State University College of Law ("FSU Law") as a visiting student.

3. During the Summer 2018 term as a visiting student at FSU Law, Plaintiff officially transferred from Ole Miss Law to FSU Law which postponed her graduation date from May 2019 to December 2019 due to ABA residency graduation requirements. Plaintiff believed that having a year and a half at FSU Law would give her the opportunity to pursue at least two additional federal legal internship/externships and take several classes in Florida law to prepare for the Florida Bar Examination.

4. Plaintiff interned from January 2019-May 2019 in the United States Attorney's Office for the Northern District of Florida during the initial tenure of United States Attorney Larry Keefe.[1] Plaintiff quit this internship on May 21, 2019, and did not pursue any additional federal legal internships/externships. Plaintiff changed her post-graduate plans and applied to FSU Law's Business Law LL.M. program instead of seeking federal employment.

---

[1] Alex Leary, Tampa Bay Times, *Trump Nominates U.S. Attorney With Close Ties to Matt Gaetz* (Aug. 16, 2018), https://www.tampabay.com/florida-politics/buzz/2018/08/16/trump-nominates-u-s-attorney-with-close-ties-to-matt-gaetz/.

5.     Between May 2019-November 2019, Plaintiff revisited her initial decision to take the Florida Bar Examination and strongly considered taking the Uniform Bar Examination instead. Four of the seven states in which Plaintiff has previously lived are states that administer the Uniform Bar Examination ("UBE"). Plaintiff spent a significant amount of time researching the bar examination and application process in several states prior to deciding to proceed with Florida as originally planned. Plaintiff filed an application to the Florida Bar with the Florida Board of Bar Examiners and registered to take the February 2020 Florida Bar Exam just prior to the November 15th registration deadline in 2019.

6.     Plaintiff registered her laptop with ILG on January 22, 2020, and took the Florida Bar Examination in Tampa, Florida, using ILG's software on February 25-26, 2020.

7.     On April 13, 2020, Plaintiff received the following scores on the February Bar Exam: Part A, Passed (137/136); Part B[2], Failed (133/136); Overall, Failed (135/136).

8.     On April 14, 2020, Plaintiff asked the Florida Board of Bar Examiners ("FBBE") to hand score the Part A portion of her examination. Four minutes later, the FBBE responded via email and confirmed they would process Plaintiff's hand

_____

[2] In Florida, Part B of the bar examination is the Multistate Bar Examination ("MBE").

score request.

9.     In the process of researching how to request a hand score, Plaintiff

had discovered that just one year prior, the FBBE changed 39 scores out of the 599

examinees (6.5% of total exam scores) from the February 2019 Florida Bar Exam

two weeks after the initial scores had been released on April 15, 2019.[3] Three of

those examinees' overall scores were changed to passing.

10.     On April 20, 2020, Plaintiff asked the FBBE for an estimated timeline

on receiving the Part A hand score results and they responded the same day saying

it would "likely not be until next week."

11.     As the weeks went by, Plaintiff became increasingly hopeful she had

passed upon regrade because of the delay in receiving the results from her Part A

hand score. After all, if she had passed upon hand score regrade, the FBBE would

have to seek approval from the Florida Supreme Court to confirm her new score

and authorize her as a candidate for admission to the Florida Bar as they had done

for three individuals just one year prior.

12.     During this time period, the FBBE and the Florida Supreme Court

made multiple assurances that the July 2020 Florida Bar Exam would take place

---

[3] *See* Press Release, Florida Supreme Court, *Revised February 2019 General Bar Examination Overall Method Results* (April 29, 2019), https://www.floridasupremecourt.org/content/download/523518/file/Bar-Exam-Press-Release-04-29-2019.pdf.

in-person as scheduled.[4] The deadline to register for the July 2020 Florida Bar Exam without a late fee was on May 15, 2020.

13.     On May 14, 2020, Plaintiff emailed the FBBE and asked if they would be willing to waive the late fee if Plaintiff waited to file her re-examination application after she received the results of her Part A handscore. Despite multiple correspondences about Plaintiff's Part A hand score request in the previous weeks leading up to this particular email exchange, the FBBE responded that they were unaware Plaintiff had ever made a Part A hand score request and recommended she file a re-examination application the following day if she wanted to avoid paying the late fee. At this time, it was too late for Plaintiff to apply to take the July bar exam in another jurisdiction, so Plaintiff filed a re-examination application with the FBBE on May 15, 2020, to sit for the July 2020 Florida Bar Exam administered by ILG.

---

[4] *See* Press Release, Florida Supreme Court, *Statement on Plans to Move Forward with Administration of In-Person Bar Exam* (May 5, 2020), https://www.floridabarexam.org/web/website.nsf/52286ae9ad5d845185257c07005 c3fe1/6a5d234624d10e8d8525855f0076ff01?opendocument.

## IV. STATEMENT OF CLAIMS

Plaintiff has included case law to show this Court and the Defendants that she brings this case in good faith and believes all claims are warranted by existing Missouri law and in compliance with the Federal Rules of Civil Procedure.

### COUNT I: NEGLIGENT MISREPRESENTATION

To establish a claim for negligent misrepresentation under Missouri law, a plaintiff must show: (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss. *J M Smith Corp. v. Bank of Mo.*, 2021 U.S. Dist. LEXIS 84765 at *7 (W.D. Mo. May 4, 2021)(citing *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010)). Plaintiff incorporates by reference the preceding factual allegations as though fully set here and further alleges:

14.     Because Plaintiff only needed a passing Part B score of 136 or higher on any administration of the July 2020 Multistate Bar Examination ("MBE") in order to receive authorization for admission to the Florida Bar, Plaintiff enrolled in a MBE-only bar prep course on April 20, 2020.

15.     On July 1, 2020, the Florida Supreme Court announced that the July

2020 Florida Bar Exam was cancelled and a one-day online exam without the

MBE was scheduled for August 18, 2020, and would be administered remotely by

ILG.[5] The exam was later rescheduled for August 19, 2020, to avoid a conflict with

Primary Election Day.[6]

16.     Following the announcement, Plaintiff reached out to the board of bar

examiners in smaller states still planning to hold their July 2020 in-person bar

exams and asked for their willingness to allow her to sign up to sit for the MBE at

their administration of the July bar exam. All declined her request.

17.     At this point, Plaintiff faced a difficult decision. She was already

enrolled to begin classes for the Business Law LL.M. program at FSU Law on

August 24, 2020.  This meant that in order to take the MBE for which she had been

studying relentlessly since April 2020, Plaintiff would have to pay $1,000+ to file a

new application in a state that had reopened applications for the administration of

the bar exam in September/October, complete the extensive paperwork involved in

_____

[5] *See* Press Release, Florida Supreme Court, *Florida Bar Exam Moves to On-Line Format in August 2020 due to Pandemic* (July 1, 2020), https://www.floridasupremecourt.org/News-Media/Court-News/Florida-Bar-Exam-Moves-to-On-Line-Format-in-August-2020-due-to-Pandemic.
[6] *See* Press Release, *Florida Supreme Court, Florida Board of Bar Examiners Changes Florida Bar Exam Date to Avoid the Primary Election* (July 3, 2020), https://www.floridasupremecourt.org/News-Media/Court-News/Florida-Board-of-Bar-Examiners-Changes-Florida-Bar-Exam-Date-to-Avoid-the-Primary-Election.

the application process, purchase a $1,500-$3,000 bar prep class for the new jurisdiction, and study lots of new material in addition to the MBE for the exam in the new jurisdiction. If she received a score of 136 or higher on the MBE, she would qualify for admission to the Florida Bar in addition to possibly passing and qualifying for admission to the state bar where she took the exam, but this also meant she risked not getting a 136 or higher on the MBE in addition to failing the exam overall. Plaintiff's other option was to move forward with the remote Florida Bar Exam on August 19, 2020, and retake the portion of the exam she had already passed in February 2020 which would count for her overall score. This option was already paid for and gave Plaintiff the opportunity to still be able to get the exam out of the way before beginning the Business Law LL.M. program on August 24, 2020. After weighing all of her options carefully, Plaintiff determined it was in her best interest financially and logistically to move forward with the Florida exam.

18.     On July 10, 2020, Petitioner re-enrolled in the original bar prep course she had taken prior to the February Bar Exam and began studying all the Part A material in preparation for the examination to be administered by ILG on August 19, 2020.

19.     Plaintiff continued to study until 10:51 pm on August 16, 2020, when she received an email from the FBBE notifying her the exam scheduled for August 19, 2020, had been cancelled due to ILG technology issues. By this time, the

deadlines to sign up for the September/October exams in other states had passed. Plaintiff was unable to sign up for any administration of the MBE until February 2021.[7]

20.  Because of Defendants' failure to exercise reasonable care, the Defendants provided false information in the course of business regarding their ability to facilitate and administer the remote August 2020 Florida Bar Exam.

21.  Plaintiff justifiably relied on Defendants' assurances that they would be able to provide adequate software and administer the remote bar examination on August 19, 2020.

22.  Due to Plaintiff's reasonable reliance on the Defendants' negligent misrepresentations to administer the August 2020 Florida Bar Exam, Plaintiff suffered many different forms of pecuniary losses such as application fees, bar prep expenses, lost wages, lost business revenue, bar examination loans, additional examination registration fees, and more. Plaintiff seeks to recover damages for all pecuniary losses incurred as a result of Plaintiff's reasonable reliance on Defendants' negligent misrepresentations.

_____

[7] Alan Gassman, *Over 1,000 Young Lawyers Are Stranded As Florida Bar Exam Is Cancelled On 72 Hours Notice*, Forbes (Aug. 19, 2020), https://www.forbes.com/sites/alangassman/2020/08/17/over-1000-young-lawyers-are-stranded-as-florida-bar-exam-is-canceled/?sh=221ddb332b42.

## COUNT II: RES IPSA LOQUITUR

In Missouri, the doctrine of res ipsa loquitur may be applied when: "(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; and (c) the defendant possesses superior knowledge or means of information as to the cause of the occurrence." *Tillman v. Menard, Inc.*, 2018 U.S. Dist. LEXIS 188756 at *10 (E.D. Mo. Nov. 5, 2018)(citing *Bass v. Nooney Co.*, 646 S.W.2d 765, 768 (Mo. 1983)). Plaintiff incorporates by reference the preceding factual allegations as though fully set here and further alleges:

23.    The Defendants had at all relevant times exclusive control and the exclusive right to control the bar examination software.

24.    Throughout the Defendants' ownership and operation of the software, the software had technical issues. On multiple occasions, the software technology glitches caused bar examinees to receive misreported scores.[8]

25.    Having to cancel a bar exam due to software issues does not ordinarily occur in the absence of negligence.

26.    The Defendants were well aware of the software issues and technical glitches with ILG software before they agreed to remotely administer the August

---

[8] See, *Murray v. ILG Techs., LLC*, 798 F. App'x 486 (11th Cir. 2020). See also, *Heath v. ILG Techs., LLC*, 2020 U.S. Dist. LEXIS 219933 (N.D. Ga. Nov. 24, 2020). See also, *Palmer v. ILG Techs.*, 2021 U.S. Dist. LEXIS 146352 (N.D. Ga. May 24, 2021).

2020 Florida Bar Exam. The cancellation of the August 2020 Florida Bar Exam was directly caused by the Defendants' negligence.

27.     The negligence of the Defendants directly and proximately caused the Plaintiff to suffer severe mental anguish, anxiety, depression, and other stress-induced medical issues. In addition, the negligence of the Defendants caused or contributed to medical expenses, lost wages, loss in business revenue, lost opportunities, additional examination fees, and more. Plaintiff seeks to recover all compensatory damages.

### COUNT III: BREACH OF CONTRACT

To establish breach of contract under Missouri law, there are four elements: "(1) the existence of an enforceable contract; (2) the presence of mutual obligations under the contract; (3) failure to perform an obligation specified in the contract; and (4) damages." *Baldwin v. Nat'l W. Life Ins. Co.*, 2021 U.S. Dist. LEXIS 175229 at *21 (W.D. Mo. Sep. 15, 2021)(citing *In re Luebbert*, 987 F.3d 771, 785 n.4 (8th Cir. 2021)). Plaintiff incorporates by reference the preceding factual allegations as though fully set here and further alleges:

28.     ILG became a party to the contract between Plaintiff, the FBBE, and Florida Supreme Court when Plaintiff paid the optional $125.00 laptop fee in addition to the re-examination fee on May 15, 2020, in order to use her laptop to

complete the Part A portion of the July 2020 Florida Board of Bar Exam via ILG software.

29.    ILG materially breached this contract on August 19, 2020, when the August 2020 Florida Bar Exam was cancelled because of ILG's unresolved technology issues.[9]

30.    Plaintiff sought to mitigate her damages at every reasonable opportunity. Most notably, Plaintiff petitioned the Florida Supreme Court for admission to the Florida Bar in September 2020, but she was unsuccessful. *Turner v. Fla. Bd. of Bar Exam'rs,* No. SC20-1425, 2020 Fla. LEXIS 1775 (Oct. 28, 2020).

31.    Plaintiff seeks damages for all expenses she incurred in reliance on Defendants' promise to perform.

### COUNT IV: EMOTIONAL DISTRESS (NEGLIGENCE)

Under Missouri law, "where the plaintiff is a direct victim of defendant's negligence and seeks damages for emotional distress, the plaintiff is required to prove two additional elements: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient

---

[9] Dan Sullivan, *Technical Glitches Postpone Florida Bar Exams*, Tampa Bay Times (Aug. 17, 2020) https://www.tampabay.com/news/florida/2020/08/17/technical-glitches-postpone-florida-bar-exams-set-for-wednesday/.

severity so as to be medically significant." *Baldwin v. Nat'l W. Life Ins. Co.*, 2021

U.S. Dist. LEXIS 175229 at \*10 (W.D. Mo. Sep. 15, 2021)(citing *Biersmith v.*

*Curry Ass'n Mgmt., Inc.*, 359 S.W.3d 84, 88 (Mo. Ct. App. 2011)). Plaintiff

incorporates by reference the preceding factual allegations as though fully set here

and further alleges:

32.    The Defendants have been parties to extensive litigation in Georgia

involving emotional distress claims from bar examinees whose overall scores were

misreported due to technical issues with ILG's software. See, *Murray v. ILG*

*Techs., LLC*, 798 F. App'x 486 (11th Cir. 2020). See also, *Heath v. ILG Techs.,*

*LLC*, 2020 U.S. Dist. LEXIS 219933 (N.D. Ga. Nov. 24, 2020). See also, *Palmer v.*

*ILG Techs.*, 2021 U.S. Dist. LEXIS 146352 (N.D. Ga. May 24, 2021).

33.    In *Murray v. ILG Techs., LLC*, the Eleventh Circuit discussed ILG's

software grading glitch: "If an applicant's total score is within five points below

270—in other words, if an applicant is within five points of achieving a passing

score—his or her essays are regraded. Once the essays are regraded, the new score is

entered into the database. It was during this "regrading process" that the alleged

software error at issue in this case occurred. The software, as designed, was

supposed to check to see if [the applicants] received a higher score on the

regrade.... for both the July 2015 and February 2016 exams, the scores on the

regraded essays were not properly taken into consideration in calculating the

scores. As a result, several individuals, including the Bar Applicants, who actually achieved a passing score based on their regraded essays were erroneously informed they had failed the bar exam." *Murray*, 798 F. App'x at 489.

34. The same software glitch most likely caused the error requiring FBBE to revise the official results of the February 2019 Florida Bar Exam in April 2019.

35. Plaintiff failed the February 2020 Florida Bar Exam by one point.

36. The FBBE allegedly lost Plaintiff's Part A hand score request despite previous correspondences with Plaintiff about the Part A hand score request.

37. Figo worked for the FBBE for a time period of approximately eight years prior to his employment with ILG.

38. If Plaintiff had known the February 2020 Florida Bar Exam would be administered with unreliable[10] bar examination software, Plaintiff would have chosen to take the bar exam in one of the alternative jurisdictions that she was already considering in the months leading up to registering as an applicant to the Florida Bar in 2019.

39. If Plaintiff had known about the ILG software technology glitches and Georgia litigation prior to May 2020, she would have signed up to take the July 2020 bar examination in another jurisdiction.

---

[10] Chloe Knue, *Oops! We Miscalculated Your Bar Exam Score*, Univ. of Cinn. Law Rev. (Feb 21, 2020), https://uclawreview.org/2020/02/21/oops-we-miscalculated-your-bar-exam-score/.

40.    If Plaintiff had known about the ILG software technology glitches and Georgia litigation prior to mid-July 2020, she would have signed up to take the September/October 2020 bar examination in another jurisdiction instead of proceeding with the August 2020 Florida Bar Exam.

41.    In late July and early August, news articles and social media posts about ILG's software issues began to circulate calling into question whether the August 2020 Florida Bar Exam was going to be able to take place. Upon learning of the ILG software issues, the Georgia litigation, and the likelihood the exam would be cancelled, Plaintiff's anxiety became so severe she broke out into a bizarre rash all over her body that required a visit to the emergency room on August 4, 2020, where she received treatment and was discharged on August 5, 2020. Plaintiff had to follow up with her primary care doctor, an allergist, and a dermatologist before it was concluded the rash was a stress-induced autoimmune response to severe anxiety. This is just one example of the medical issues demonstrating a physical manifestation of mental anguish that Plaintiff has experienced as a result of her emotional distress caused by Defendants' negligence.

42.    Plaintiff continues to experience severe emotional distress impacting her mental health and physical health in many forms such as depression, anxiety, and stress-induced autoimmune health issues. Plaintiff is willing to provide

additional information about her medical conditions and prescribed medications under seal or protective order.

43. In April 2021, Plaintiff sent the Defendants a settlement demand letter with extensive supporting documentation about her damages at the time including medical photographs, medical records, and financial records. Plaintiff demonstrated the emotional, physical, and financial strain the Defendants' negligence continues to make on her daily life. Plaintiff provided receipts, documentation, and an explanation for every expense included in the calculation of her settlement demand. Plaintiff made this effort to show Defendants she was willing to negotiate and cooperate in good faith to try and reach a fair and efficient out-of-court resolution saving everyone the time, effort, and costs of litigation.

43. The Defendants hired legal counsel in Florida who responded to Plaintiff's letter in bad faith[11] which increased Plaintiff's emotional distress.

44. Prior to filing this case in Missouri, Plaintiff once again reached out to the Defendants directly and asked if they would like to enter into settlement negotiations prior to Plaintiff filing this case. Figo declined on behalf of Defendants.

45. Plaintiff seeks damages for emotional distress in the amount of $507,235.74 from ILG, $507,235.74 from Figo, and $507,235.74 from Misman.

---

[11] Defendants' counsel in Florida may have had ulterior motives (possibly unbeknownst to Defendants) for responding to Plaintiff in this manner.

## V. RELIEF REQUESTED

Plaintiff respectfully requests that this Court enter a judgment against Defendants on every count and grant Plaintiff pecuniary damages, compensatory damages, reliance damages, emotional distress damages in the amount of $1,521,707.22, the costs of this action, reimbursement for travel expenses directly related to this action, and any additional relief as this Court deems just and proper.

# VI. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3rd of October, 2021.

Signature of Plaintiff: _Madison B. Turner_

Printed Name of Plaintiff: _____ Madison B. Turner _____.

Dated this 3rd day of October, 2021.

Respectfully Submitted,

By:
Madison B. Turner
Pro Se Plaintiff
629 SW Ninth Street
Apt. #112
Gainesville, FL 32601
(731)-446-5954
mbt16b@my.fsu.edu