# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

MADISON B. TURNER

       Plaintiff,

    v.

ILG TECHNOLOGIES, LLC,

       Defendant.

Case No. 2:21-cv-04192-NKL

## <u>ORDER</u>

*Pro Se* Plaintiff Madison Turner claims Defendant ILG Technologies, LLC ("ILG") offered deficient software to administer the August 2020 Florida Bar Exam, which resulted in its cancelation, damaging Ms. Turner. Ms. Turner brings two claims of negligence against ILG. ILG moves to dismiss Ms. Turner's claims, arguing that Ms. Turner failed to join an indispensable party, the Florida Board of Bar Examiners (the "FBBE"); that venue is improper in the Western District of Missouri; and that Ms. Turner has failed to state a claim upon which relief can be granted. As explained in detail below, only ILG's Rule 12(b)(6) arguments have merit. Accordingly, ILG's Motion to Dismiss, Doc. 32, is GRANTED in part and this case is DISMISSED without prejudice. ILG's Motion to Strike and for Sanctions, Doc. 52, is DENIED, however Ms. Turner's unauthorized declarations, Doc. 47; Doc. 48, are STRICKEN. Finally, Ms. Turner's Motion for Leave to File an Amended Complaint, Doc. 57, is DENIED. Within 14 days of this Order, Ms. Turner may file a Second Amended Complaint if, and only if, she can plead facts to address the deficiencies identified by this Order.

## I.    BACKGROUND

    Ms. Turner originally filed a four-count Complaint on October 12, 2021. Doc. 1. The

Court dismissed Ms. Turner's original complaint because she had not properly served any of the named defendants. Doc. 24. Ms. Turner filed an Amended Complaint, which named only ILG and included only two counts: (1) res ipsa loquitor and (2) emotional distress. Doc. 27. The same theory of negligence underlies each count. Ms. Turner alleges that ILG was an independent contractor engaged by the FBBE to provide software permitting portions of the Florida Bar Exam to be completed in a secure offline electronic format. Doc. 27, at ¶¶ 3–4. Ms. Turner alleges that she was registered to take the Florida Bar Exam that was scheduled for July 2020. Doc. 27, at ¶ 11. However, because of complications caused by the COVID-19 pandemic, the July 2020 Florida Bar Exam was ultimately postponed to August 19, 2020. Doc. 27, at ¶ 12. The Exam is typically two days and completed in person, but ILG was tasked with administering the August 19, 2020, Florida Bar Exam as a one-day, fully remote examination. Just a few days before it was scheduled to take place, the FBBE cancelled the August 19, 2020, exam because of issues with ILG's technology. Doc. 27, at ¶ 13. Ms. Turner alleges that ILG knew about various technical issues with its software, and the risks posed by proceeding with that software, before agreeing to remotely administer the August 2020 Florida Bar Exam. Doc. 27, at ¶¶ 17, 21–23. Ms. Turner alleges that ILG was negligent because it knowingly offered faulty software, which failed, causing the August 19, 2020, Florida Bar Exam to be cancelled. Doc. 27, at ¶¶ 14–18. As a result, Ms. Turner alleges, she incurred various types of damages. Doc. 27, at ¶¶ 19–20.

## II.  DISCUSSION

### A. Whether this Case Should Be Dismissed Because the FBBE Is an Indispensable Party

ILG first argues that Ms. Turner's Amended Complaint must be dismissed because she

failed to join an indispensable party, the FBBE. Under Rule 12(b)(7)[1] a party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). To determine whether a party is indispensable, and therefore whether dismissal is warranted under Rule 19, the Court conducts a three-step inquiry to evaluate (1) whether the absent party is "required," (2) whether joinder of the absent party is feasible, and (3) whether the lawsuit can continue "in equity and good conscience" in that party's absence. *See* Fed. R. Civ. P. 19; *accord Republic of Philippines v. Pimentel*, 553 U.S. 851, 856-57 (2008). When conducting this inquiry, the court accepts the plaintiff's allegations as true, but may consider matters outside the pleadings. *Omega Demolition Corp. v. Hays Grp., Inc.*, 306 F.R.D. 225, 227 (D. Minn. 2015). The burden rests with the defendant to produce evidence establishing both "the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Id.* (internal quotation marks omitted). Although Rule 12(b)(7) permits dismissal, "courts are generally 'reluctant to grant motions to dismiss of this type.'" *Fort Yates Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 671 (8th Cir. 2015).

A party is "required" if:

(A) in that [party's] absence, the court cannot accord complete relief among existing parties; or

---

[1] ILG styles its Motion to Dismiss for Failure to Join an Indispensable Party as a Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Rule 12(b)(1), because joining the FBBE would destroy the Court's diversity jurisdiction. ILG concedes that the requirements of diversity have been met by the parties currently before the Court. Doc. 32, at 10. Regardless of whether the Motion is considered under Rule 12(b)(1) or Rule 12(b)(7), the analysis turns on Rule 19. Accordingly, while the distinction—at this stage—is largely academic, the Court will treat the motion as made pursuant to Rule 12(b)(7), which specifically targets a failure to join a party required under Rule 19, rather than 12(b)(1), which addresses more general issues with the Court's subject matter jurisdiction. *See generally Schweyer Imp.-Schnittholz GmbH v. Genesis Capital Fund, L.P.*, 220 F.R.D. 582, 585 (S.D. Iowa 2004) (proceeding under Rule 12(b)(7) when movant argued failure to join an indispensable party and joinder would destroy diversity); *Wells Fargo Tr. Co., Nat'l Ass'n v. S. Sioux City*, 20-CV-359, 2022 WL 1426623, at *4 (D. Neb. May 5, 2022).

> (B) that [party] claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party's] absence may:
>
>> (i) as a practical matter impair or impede the [party's] ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). ILG argues that the FBBE is a necessary party because Ms. Turner's claims ultimately turn on actions taken by the FBBE. For example, ILG notes that Ms. Turner's Amended Complaint includes numerous allegations regarding "apparent miscommunications between Plaintiff and FBBE," which led to Ms. Turner's registering for the July 2020 Florida Bar Examination. *See* Doc. 32, at 11. ILG also says that Ms. Turner is attempting to have "ILG defend, and hold ILG liable for, actions that were taken by the FBBE that relate to her petition for admittance to [t]he Florida Bar[.]" *Id.* This, however, incorrectly describes Ms. Turner's claims.

While the Amended Complaint does include factual allegations relating to Ms. Turner's interactions with the FBBE after Ms. Turner failed the Florida Bar Exam in February 2020, Ms. Turner's claims do not turn on the FBBE's actions. *C.f. Two Shields v. Wilkinson*, 790 F.3d 791, 797 (8th Cir. 2015) (suggesting that a party would be required if it "emerges as an active participant in the allegations made in the complaint that are critical to the disposition of the important issues in the litigation.") (quoting *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir. 1999)). This case is about ILG's technology failures and how they contributed to the cancellation of the August 2020 Florida Bar Exam for which Ms. Turner subsequently registered. Contrary to ILG's suggestions, this case is not about—and has never been about—Ms. Turner's original failing score or the FBBE's actions thereafter. *Compare* Doc. 32, at 2 ("Plaintiff purports to hold Defendant responsible for her failure to pass the Florida Bar Exam in February 2020[.]") *with* Doc. 27. at 10-14 (explaining that Ms. Turner's negligence claims arise from ILG's technology failures

4

that led to the postponement of the Florida Bar Exam from August 2020 to October 2020, unrelated to Ms. Turner's previous attempts to take the Florida Bar Exam). Nor does Ms. Turner fault the FBBE for canceling or postponing the August 2020 Florida Bar Exam because of ILG's technology failures.

ILG has the burden of identifying the FBBE's interest in this litigation. *Omega Demolition Corp.*, 306 F.R.D. at 227. The only FBBE interest identified by ILG related to Ms. Turner's properly construed claims appears to be that litigating this negligence cause of action might implicate the contract between the FBBE and ILG. But ILG does not explain why that would be true. Indeed, as ILG points out, the contract creates no third-party rights which would benefit Ms. Turner. Doc. 32, at 13. Accordingly, the duty Ms. Turner claims ILG violated arises only under tort law, not the contract between the FBBE and ILG, and the contract therefore should bear little on whether ILG breached that duty and caused Ms. Turner to suffer damages.

Simply referencing a third party in a complaint does not make it legally required or indispensable. The FBBE is not an "active participant" in Ms. Turner's allegations against ILG, and resolving this matter will not require an evaluation of the propriety of the FBBE's actions. *C.f. Two Shields*, 790 F.3d at 797 (quoting *Laker Airways*, 182 F.3d 843). In short, ILG has not explained why the Court cannot afford Ms. Turner complete relief without joining the FBBE, and therefore has failed to show the FBBE is required under Rule 19(a)(1)(A). ILG also has not adequately explained how proceeding without the FBBE would imperil its interests, or risk ILG incurring double, multiple, or inconsistent obligations, as required under Rule 19(a)(1)(B). ILG has not met its burden, and the Court therefore concludes that the FBBE is not a required party

under Rule 19(a).[2]

Therefore, ILG's Motion to Dismiss for Failure to Join an Indispensable Party is DENIED.

### B. Whether Venue is Proper in the Western District of Missouri

ILG also argues that this case should be dismissed because venue is improper pursuant to Rule 12(b)(3). Claims should be dismissed pursuant to Rule 12(b)(3) "when venue is wrong or improper in the forum in which it was brought." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). A party seeking dismissal under this rule bears the burden to establish that venue is improper. *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947).[3] Ms. Turner claims venue is proper in this District under 28 U.S.C. § 1391(b)(2), which provides: "A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2); *see also* Doc. 27, at 7. "[T]he propriety of venue in a given court is to be determined exclusively as a matter of statutory interpretation." *In re Union Elec. Co.*, 787 F.3d 903, 906 (8th Cir. 2015). Section 1391(b)(2) "does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only

---

[2] Because the Court finds that FBBE is not a required party under 19(a), the Court need not discuss Fed. R. Civ. P.19(b).

[3] ILG argues that it is Ms. Turner's burden to prove that venue is proper in the Western District of Missouri. ILG has identified a split in this District, as there are indeed cases that have so held. *Kobush v. Am. Suzuki Motor Corp.*, No. 89-4332, 1990 WL 13511, at *1 (W.D. Mo. Feb. 6, 1990); *Pfeiffer v. Int'l Acad. of Biomagnetic Med.*, 521 F. Supp. 1331, 1336 (W.D. Mo. 1981). However, this Court is bound by the Eighth Circuit's opinion in *United States v. Orshek*, in which the Eighth Circuit required the movant to show that venue was improper on a motion to dismiss for improper venue. *See* 164 F.2d 741, 742 (8th Cir. 1947); *see also Coug & Co., Inc. v. Cougar Paws, Inc*., No. 4:21-CV-271, 2022 WL 1439848, at *6 (S.D. Iowa Jan. 5, 2022) (holding that *Orshek* remains controlling, despite subsequent developments in the case law, and collecting cases); *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (holding that, in the event of conflicting Eighth Circuit decisions, courts must follow the earliest controlling precedent). So long as a plaintiff makes a *prima facie* showing that venue is proper in this District, it is for the defendant to prove that it is not. *Caricato v. Nissan N. Am., Inc.*, No. 4:20-CV-01007-NKL, 2021 WL 5044867, at *1 (W.D. Mo. June 1, 2021).

that a substantial part of the events giving rise to the claim occurred there." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995). The Court "do[es] not ask which district among two or more potential forums is the 'best' venue, rather [the Court] ask[s] whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003).

In deciding whether venue is proper under Section 1391(b)(2), the Court must focus on ILG's alleged wrongful activity. *Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014). Ms. Turner argues that "[m]ost of the Defendant's negligent acts presumably took place in Cole County," indeed less than ten minutes from the Federal Courthouse in Jefferson City, where ILG's principal place of business is located. Doc. 41, at 8, 10. Joseph Figo, one of ILG's two member-managers, also resides within the Western District of Missouri. *Id.* at 10. ILG counters that Ms. Turner's claims generally relate to her inability to pass the Florida Bar Exam and cites to Ms. Turner's allegations relating to her interactions with the FBBE. At bottom, ILG argues that Ms. Turner's claim is that "ILG negligently attempted to administer the Florida Bar Exam in or about August 2020—in Florida." Doc. 32, at 15.

While ILG is incorporated under the laws of Florida, its software was to be used in Florida, and the FBBE ultimately chose to reschedule the exam in Florida, there is still venue in the Western District of Missouri. Drawing all inferences in Ms. Turner's favor, and construing the Amended Complaint liberally, she alleges that ILG's software was developed and maintained in, and its corporate decisions were made from, ILG's principal place of business in Jefferson City, Missouri. *Dullea v. Pension Benefit Guarantee Corp.*, No. 14-CV-5108, 2015 WL 13699274, at *2 (D. Minn. June 16, 2015) ("When evaluating Rule 12(b)(3) motions to dismiss for improper venue, courts 'must draw all reasonable inferences in favor of the non-moving party and resolve all factual

conflicts in favor of the non-moving party.'" (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)); *Olsen as Tr. for Xurex, Inc. v. Di Mase*, 24 F.4th 1197, 1202 (8th Cir. 2022) (explaining that all pro se litigants are entitled to liberal construction of their filings).

ILG has the burden to prove that the activities at issue in this case did not take place within this district, but it has not done so. *See* n.3 *supra* at 6. Despite submitting a declaration from Mr. Figo, ILG has not demonstrated that Ms. Turner's allegations about ILG's connections to the Western District of Missouri are false. *See generally See* Doc. 32-1, ¶ 5 (Declaration of Joseph Figo); Doc. 32-1, Ex. D, P. 18 (Florida incorporation records showing, ILG's Principal Address in Jefferson City, Missouri). ILG spends almost no time discussing its business practices or, more importantly, its software development and maintenance and its corporate decision-making. Thus, the Court must conclude for purposes of this motion that the activities that lay at the heart of Ms. Turner's claims took place within the Western District of Missouri.[4]

### C. Whether Venue Should be Transferred to the Northern District of Florida

ILG alternatively asks this Court to transfer this case to the Northern District of Florida. ILG originally sought transfer pursuant to 28 U.S.C. § 1406, which permits transfer when venue is improper. Because the Court has determined that venue is indeed proper in this District, and because the analyses are similar, the Court will look instead to 28 U.S.C. § 1404(a), which governs transfer when venue is otherwise proper. *See generally Dakota Provisions, LLC v. Hillshire*

---

[4] Alternatively, while not argued by the Parties, it appears venue is proper in the Western District of Missouri under Section 1391(b)(1), which states that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391. For the purposes of venue, ILG resides in "any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C § 1391(c)(2). ILG is subject to personal jurisdiction in the Western District of Missouri, as one of its member managers resides here. *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004); *see also* Doc. 32-1, ¶ 5; Doc. 32-1, Ex. D, at P. 17. ILG is the only defendant in this case, and therefore, because ILG is a resident of the Western District of Missouri, venue is proper here.

*Brands Co.*, 226 F. Supp. 3d 945, 959 (D.S.D. 2016) (explaining the difference between 28 U.S.C. § 1404(a) and § 1406).

Under Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997). That burden is heavy. *Sleep No. Corp. v. Young*, 507 F. Supp. 3d 1081, 1090 (D. Minn. 2020) (citations omitted). The Eighth Circuit has "declined to offer an 'exhaustive list of specific factors to consider' in making the transfer decision[.]" *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (quoting *Terra Int'l*, 119 F.3d at 693). Instead, it has instructed district courts to "weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Courts generally consider "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l*, 119 F.3d at 691.

### i. Convenience Factors

When deciding whether transfer is appropriate, courts broadly consider which forum would be more convenient. In doing so, courts look to (1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility of records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law. *Terra Int'l, Inc.*, 119 F.3d at 696. When transfer would

"merely shift the inconvenience from one [party] to the other," it should not be permitted. *Id.* at 696–99; *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 928 (W.D. Mo. 1985) (internal citations omitted).

### a. Whether Transfer is More Convenient for the Parties

"The logical starting point for analyzing the convenience of the parties is a consideration of their residences in relation to the district court and the proposed transferred district." *Fluid Control Prods.*, 2011 WL 620115, at * 2 (internal quotation omitted). ILG argues that proceeding in the Northern District of Florida is more convenient. However, ILG's only support for that position is that one of its member-managers lives in Sarasota County, Florida (located in the Middle District of Florida), *see* Doc. 32-1, ¶ 5, it is incorporated under the laws of Florida, and it has a registered agent there (seemingly in the Southern District of Florida).[5] Doc. 32-1, ¶ 5; Doc. 32-1, Ex. D, at P. 18. However, ILG's other member-manager resides—and its principal place of business is located—mere minutes from the federal courthouse in Jefferson City, Missouri. Doc. 41, at 10; *see also* Doc. 32-1; Ex. D., at P. 17; Doc. 30-5 (ILG's 2022 Annual Report). ILG does not appear to have an office or any official presence in Florida, beyond its member-manager and registered agent. ILG has not shown how having its registered agent and a member-manager in Florida (in the Southern and Middle Districts, respectively) would make it more convenient to litigate in the Northern District of Florida. Because, from the record before the Court and drawing all inferences in Ms. Turner's favor, ILG seems to operate out of its headquarters in the Western District of Missouri, the Court finds transfer would not be more convenient for ILG.

While litigating in the Western District of Missouri may be somewhat burdensome for Ms. Turner—a student living in Gainesville, Florida—she has elected to proceed here. As discussed

---

[5] ILG's registered agent, Fabricant & Company PA, appears to be a third-party accounting and litigation support firm that works on ILG's behalf. Doc. 32-1, Ex. D., P. 18.

in more detail below, her choice is entitled to some weight. In short, ILG has failed to show that proceeding in the Western District of Missouri is inconvenient for the parties based on their respective locations.

Courts also consider the demands that the discovery process is likely to place on each party. *Med. Shoppe Int'l v. Tambellini*, 191 F.Supp.2d 1065, 1070 (E.D. Mo. 2002). ILG argues that most of the records and documents related to this case are in the Northern District of Florida. As an initial matter, the Court is not persuaded that this is true. ILG explained that relevant documents are in the Northern District of Florida because of the agreement between ILG and the FBBE, which required that any information received by ILG because of its contractual relationship with the FBBE be returned to the Northern District of Florida. *See* Doc. 32-1, at ¶¶ 28–30. While it is reasonable to believe some of the documents held in the Northern District of Florida could become relevant, there is nothing in ILG's briefing or Mr. Figo's supporting declaration that suggests that most, or even many, of the relevant documents—for example, documents related to ILG's software development and maintenance, past complaints or other evidence of software malfunctions, or internal correspondence reflecting corporate decision making—would have been implicated by the contract with the FBBE or would otherwise be held in the Northern District of Florida. Instead, it seems much more likely that these documents are located at ILG's main office in Jefferson City, Missouri.

To the extent there are documents in the Northern District of Florida—for example, documents related to the FBBE's decision to cancel the August 2020 Florida Bar Exam—there is no argument that they are so voluminous or stored in such a way that would make their transfer for use in this District unduly burdensome. When records can be easily be transferred or transported, their location does not factor into the Court's analysis. *Biometics, LLC v. New Womyn,*

*Inc.*, 112 F. Supp. 2d 869, 876 (E.D. Mo. 2000) ("The patent prosecution records would be easily transported, or could be obtained from the United States Patent Office, and therefore do not factor into the Court's analysis."). Indeed, ILG has indicated that most of the documents are stored electronically. The Court sees no reason why electronically stored information cannot be sent, with little burden, to the Western District of Missouri.

Ms. Turner's medical records presumably being located in the Northern District of Florida similarly does not alter the Court's analysis. Ms. Turner's medical records are easily obtainable and there is no indication that proceeding in this District will make doing so substantially more difficult or costly. ILG has not met its heavy burden to show that, on the facts of this case, it would be unduly burdensome to litigate this case in the Western District of Missouri because of the location of the relevant documents and evidence. *See CSI Tech., Inc. v. Commtest Instruments Ltd.*, 08-cv-450, 2008 WL 4057546, at *7 (D. Minn. Aug. 26, 2008) ("CSI has made no showing that the relevant documents are so voluminous that their transport would entail a 'major undertaking.'") (citing *Becnel v. Smile Cmty. Action Agency, Inc.*, 207 F.Supp.2d 520, 522 (M.D. La. 2001)).

In sum, ILG has not shown that transfer to the Northern District of Florida is substantially more convenient for the Parties.

### b. Whether Transfer is More Convenient for Potential Witnesses

ILG also argues that the Northern District of Florida is more convenient for any witnesses required for trial. This factor is not simply controlled by the number of witnesses for each side and where those witnesses are located. *See, e.g., Terra Int'l*, 119 F.3d at 696 (noting that the "sheer number of witnesses will not decide which way the convenience factor tips"). The Court must also look at the importance of the anticipated witnesses' testimony. *Nw. Airlines, Inc. v. Filipas*, Civ. No. 07–4803, 2008 WL 1773756, at *5 (D. Minn. Apr. 15, 2008) ("The court must examine

the materiality and importance of the anticipated witnesses' testimony and determine whether the forum is convenient for them"). "In analyzing the convenience-of-witnesses factor, the Court must focus on non-party witnesses, since it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." *Cosm. Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1106 (D. Minn. 2010) (internal citations and quotation marks omitted). This factor is considered the most important in the transfer analysis. *Biometics*, 112 F. Supp. 2d at 876. ILG anticipates four witnesses: "(1) a corporate representative of ILG; (2) a corporate representative of FBBE; (3) Plaintiff; and (4) a records custodian and/or corporate representative with respect to Plaintiff's medical expenses." Doc. 32-1, ¶ 33. For her part, Ms. Turner identified two witnesses located in Jefferson City, Missouri, two witnesses who reside in Nevada, and one witness who resides in California. Doc. 41, at 10. Ms. Turner has not explained who these witnesses are or what she plans for them to discuss.[6]

ILG first points to the FBBE corporate representative, who presumably resides in the Northern District of Florida. Although the FBBE is an ancillary player in Ms. Turner's theory of ILG's negligence, the FBBE allegedly postponed the Florida Bar Exam because of ILG's negligence, and as a result, the FBBE will likely have some information regarding ILG's software,

---

[6] After ILG filed its Reply in Support of its Motion to Dismiss, Doc. 46, Ms. Turner filed two declarations. Doc. 47; Doc. 48. These declarations address points raised by ILG in its Reply, including the identity of one of her proposed witnesses. Ms. Turner further mentions, for the first time, an ethics complaint against Mr. Figo. The Court construes these filings as a Motion for Leave to File a Surreply, which the Court DENIES. The Court accordingly has not considered those declarations in deciding the motion to dismiss, and the Court will STRIKE Docs. 47 and 48 from the record. ILG asks the Court to sanction Ms. Turner for these filings. While Ms. Turner is obligated to follow the Federal Rules of Civil Procedure and this District's Local Rules even though she is proceeding *pro se*, the Court must exercise its inherent powers with "restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Ms. Turner's filings were improper, but she is not yet an attorney. Her filings were at most, a modest inconvenience for the Court and the Defendant. ILG has not shown that sanctions are appropriate. ILG's Motion to Strike and for Sanctions, Doc. 52, is DENIED.

its malfunction, and the decision to cancel the August 2020 Florida Bar Exam. The FBBE is not a party, and this Court cannot compel an FBBE representative to appear for trial. *See generally* Fed. R. Civ. P. 45(c). That said, the FBBE is subject to discovery, and deposition testimony or virtual testimony could alleviate some of the inconvenience. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F. Supp. 1334, 1360 (N.D. Iowa 1996) (finding convenience of witnesses factor "flat" when foreign non-party witness was subject to discovery and alternative methods of testimony, like recorded deposition, could adequately convey testimony if the case were presented to a jury) aff'd, 119 F.3d 688 (8th Cir. 1997). ILG has not explained why similar alternative methods would be inappropriate or burdensome in this case.

The same holds true for any medical witnesses that the parties intend to use to explore Ms. Turner's medical damages. While these witnesses might be in Florida, if securing their presence in the Western District of Missouri becomes unduly burdensome, the parties will have numerous tools at their disposal to secure their testimony through alternate means.

Ms. Turner has also identified two witnesses in the Western District of Missouri, although Ms. Turner provided no information from which the Court could analyze the importance of their testimony. Of course, as for ILG's corporate witness, litigation in the Western District of Missouri is presumably more convenient for the Missouri-based witnesses.

Ms. Turner also has identified three witnesses who reside in neither Missouri nor Florida. She argues that because the Northern District of Florida is even farther from these witnesses— who reside in Nevada and California—the Western District of Missouri is a more convenient forum. The Court is not persuaded that this is true. These witnesses would be forced to travel either way, and, given the realities of modern travel, the Court will not speculate whether it would be more convenient for these witnesses to travel to Jefferson City, Missouri or Tallahassee, Florida.

*See generally Trident Steel Corp. v. Oxbow Steel Int'l, LLC*, No. 4:09-CV-1332 TCM, 2009 WL 3242045, at *5 (E.D. Mo. Oct. 5, 2009) (finding that transfer to California was not justified by witnesses who resided in China, Taiwan, and Texas "in light of the ease of airplane travel and the availability of alternative methods of presenting witness testimony").

Taken together, the convenience of the witnesses factor does not weigh in favor of either forum. Because the testimony of the non-party witnesses who reside outside this District seems less integral to Ms. Turner's claims, and because that testimony can be preserved and presented in alternative ways, such as by recorded deposition or by virtual appearances, the Court does not find the burden on these witnesses to be so substantial as to justify transfer. What's more, transfer to the Northern District of Florida would not eliminate, or even substantially alleviate, the burdens of trial testimony. It would only change who would be required to travel. "'[W]hen the inconvenience of the alternative venues is comparable, there is no basis for a change of venue; the tie is awarded to the plaintiff[.]'" *Trident Steel*, 2009 WL 3242045, at *4 (quoting *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003)).

The other convenience factors similarly do not favor transfer. As previously explained, the alleged negligence Ms. Turner targets occurred—at least on the face of the pleadings and limited record before the Court—in the Western District of Missouri. Ms. Turner claims ILG created and maintained faulty software, and, despite knowing about the software's weaknesses, negligently agreed to remotely administer the Florida Bar Exam. While the causal chain may have ended in Florida, drawing all inferences in Ms. Turner's favor, it began long before, with an epicenter in ILG's corporate headquarters in the Western District of Missouri. Similarly, there are no substantive legal differences that would weigh in favor of transfer. Should this Court transfer this case to the Northern District of Florida, that court, like this Court, would follow Missouri's choice

of law rules. *Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 586 (8th Cir. 2007) ("[I]f a district court in one state transfers an otherwise properly filed case to a district court in another state solely "[f]or the convenience of parties and witnesses," 28 U.S.C. § 1404(a), the transferee court applies the choice-of-law rules of the state in which the transferor court sits.") (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)). This consideration therefore weighs in favor of denying the motion to transfer.

For these reasons, ILG has failed to carry its heavy burden to prove that transfer to the Northern District of Florida is appropriate on account of the convenience of the witnesses.

**ii.  Interest of Justice Factors**

Next, the Court must determine whether transfer is in the interest of justice. Included in the interests of justice factor are such considerations as "judicial economy," "the plaintiff's choice of forum," "the comparative costs to the parties in litigating in each forum," "obstacles to a fair trial," and "the advantages of having a local court determine questions of local law." *Terra Int'l, Inc.*, 119 F.3d at 696. ILG does not mention several of these factors. For example, ILG does not suggest that judicial economy favors transfer (the Court does not see how it would), that there are obstacles to a fair trial in this District (the Court is aware of none), nor does it claim that there are any relevant local concerns that would affect transfer (again, the Court sees none). ILG instead focuses on Ms. Turner's chosen forum and the cost of litigating in the Western District of Missouri. The Court will address these points below.

**a.  Whether Ms. Turner's Choice of Forum is Entitled to Weight**

As noted, Courts generally give a plaintiff's chosen venue considerable deference. ILG counters that this deference is defeated both by the fact that Ms. Turner does not reside in the Western District of Missouri and because she engaged in forum shopping. First, the Court's

deference to Ms. Turner's choice of forum need not be weakened by the fact that she is not a resident of the Western District of Missouri. Courts consider, in addition to the plaintiff's residence, whether the cause of action relates to the chosen forum. When it does not, and the plaintiff is not a resident, then a plaintiff's choice is given little weight. *See, e.g.*, *Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 877 (E.D. Mo. 2000) ("The Court therefore gives less deference to plaintiff's choice of forum than it would if plaintiff resided here or if defendants' allegedly infringing activity was centered here."); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 592 (E.D. Va. 1992) ("However, when, as here, a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.").

While Ms. Turner is not a resident of the Western District of Missouri, as discussed above, her claim relates to the forum. ILG did nothing to counter that assertion. The Court will not discount Ms. Turner's decision to proceed in this District, even though she does not reside here, because ILG has not shown that Ms. Turner's claims are not related to this forum.

ILG next argues that Ms. Turner's choice should be completely disregarded as she has engaged in forum shopping. ILG is correct that when a plaintiff's choice of forum is motivated by forum shopping, it is entitled to no weight. *See, e.g., Nicklaw v. CitiMortgage, Inc.*, No. 14-CV-1795, 2015 WL 13158028, at *4 (E.D. Mo. Apr. 8, 2015). ILG argues that Ms. Turner herself suggested that she chose to proceed in this Court because of actions taken by the court in her previous case in the Northern District of Florida, *Turner v. Canady et al*. Doc. 41, at 8, 11. Ms. Turner stated that, after the *Canady* Court made several comments in its Order denying her Motion to File a Second Amended Complaint Under Seal, she "decided to take her truthful allegations and substantiating photos, videos, text messages, emails, and eyewitness testimony elsewhere." Doc.

41, at 8. She voluntarily dismissed her claims, brought an administrative claim to address the constitutional issues in *Canady,* "and filed this lawsuit in Missouri." *Id.* Separately, Ms. Turner explained that proceeding in the Northern District of Florida caused her anxiety and was more burdensome because the *Canady* court denied her access to its e-filing program. *Id.* at 11.

While these comments suggest that Ms. Turner indeed believes it more convenient to proceed in the Western District of Missouri, this is not a traditional case of forum shopping. First, contrary to ILG's arguments, it does not appear Ms. Turner is seeking to avoid a decision of the *Canady* court. Neither ILG nor Ms. Turner's claims against it were ever before the Court in *Canady*. Ms. Turner originally alleged that the defendants in *Canady,* all government actors, violated her constitutional rights in violation of 42 U.S.C. § 1983. *See* Doc. 37-1, 1–8, 33–44. ILG suggests that Ms. Turner attempted to add ILG as a party in that case in her Second Amended Complaint, along with claims for breach of contract, negligence, negligent misrepresentation, negligent infliction of emotional distress, and *res ipsa loquitur*. However, ILG did not provide a copy of Ms. Turner's Proposed Second Amended Complaint, and it is not in any of the materials submitted by Ms. Turner. It also does not appear that the Proposed Second Amended Complaint was filed in the Northern District of Florida. Accordingly, the Court cannot determine the scope of the claims in the Proposed Second Amended Complaint. But even accepting that Ms. Turner's claims in this Court were included in her Proposed Second Amended Complaint in the Northern District of Florida, she ultimately never *filed* a Second Amended Complaint, and therefore her claims never became a part of the case in *Canady*. This is not because the *Canady* Court stopped her, but rather because she chose to voluntarily dismiss her case. The *Canady* Court did not

discuss—and may not have even seen—the merits of any of Ms. Turner's claims against ILG,[7] and accordingly Ms. Turner's choice to proceed in this Court cannot be seen as an attempt to circumvent an order by the Northern District of Florida.

What's more, the only order identified by ILG is the *Canady* court's Order denying Ms. Turner's Motion to Seal; it was in that Order that the *Canady* court made comments that led Ms. Turner to dismiss her case. Ms. Turner did not try to circumvent the Northern District of Florida's order, as she did not try to file her complaint under seal in this Court. Instead, as Ms. Turner explained, she simply chose to pursue each of her claims, which could have been—but need not have been—joined in one lawsuit in Florida, separately. Doc. 41, at 8–9. This includes her claims against ILG, which were not originally part of Ms. Turner's claims in *Canady*. That is not forum shopping.

Second, ILG has not identified any substantive benefit to Ms. Turner afforded by proceeding in this Court. At most, ILG identifies Ms. Turner's ability to file electronically. Even if Ms. Turner knew that she would be able to file electronically in this Court,[8] this attendant benefit is not substantial enough to support a charge of forum shopping.

At bottom, ILG has failed to show the Court that Ms. Turner's decision to bring this case in Missouri is motivated by a perception that she will receive a more favorable ruling here or to avoid a decision of the *Canady* Court.

### b. Whether Litigating in the Western District of Missouri Is More Costly

---

[7] The comments in the *Canady* Court's Order highlighted by Ms. Turner, at most, address the generally applicable standards of Rule 11, referencing Ms. Turner's discussion of her allegations against the Government defendants, and appear wholly unrelated to any claim against ILG.

[8] Indeed, it appears Ms. Turner did not begin e-filing until nearly two months after filing her initial Complaint in this Court.

Cost is a relevant consideration under the interest of justice analysis. *See, e.g.,* *GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs., Inc.*, Civ. No. 02–1224, 2003 WL 1572007, at *2 (D. Minn. Mar. 13, 2003) (noting that the relative ability of parties to absorb litigation cost in each forum is relevant to interest-of-justice analysis). ILG suggests that litigating in the Western District of Missouri would make this case more expensive to litigate. As previously expressed, the Court doubts this to be true. ILG's principal place of business is in Jefferson City, Missouri, and it has no physical presence in Florida beyond its registered agent and one member-manager, neither of whom resides in the Northern District of Florida. Doc. 32-1, ¶ 5; Doc. 32-1, Ex. D, P. 18. Accordingly, if the Court were to transfer this case, ILG would effectively be litigating in a foreign forum.

Furthermore, litigating in this Court will not substantially change the cost or scope of discovery. This is especially so because ILG already has counsel in both Missouri and Florida to assist it with managing the discovery process. While ILG may incur expenses should this case go to trial because certain witnesses are in Florida, the same would be true if this case were transferred to the Northern District of Florida, away from ILG's principal place of business, because certain witnesses are in Missouri.

In sum, ILG has not carried its heavy burden to show that the cost of litigating in the Northern District of Florida is substantially less than the cost of litigating in the Western District of Missouri.

*     *     *

Taken together, the interest of justice factors, as argued by ILG, do not weigh in favor of transfer.

### iii.    Sum of the Factors

For the reasons discussed above, ILG has failed to meet its burden to show that transfer to

the Northern District of Florida is warranted. None of the relevant factors weigh in favor of transfer, and accordingly, ILG's Motion is DENIED on this point.

### D. Whether Ms. Turner Fails to State a Claim

ILG also argues that Ms. Turner has failed to state a claim upon which relief can be granted. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Accordingly, a plaintiff's complaint must plead "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party . . . but [is] not bound to accept as true [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (internal citations and quotation marks omitted). What's more, when the plaintiff is proceeding *pro se,* she is held to a "lesser pleading standard," *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d at 849 (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)), and the Court must construe her filings "liberally[.]" *Miles v. Ertl Co.*, 722 F.2d 434, 434 (8th Cir. 1983) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21

(1972)).

Ms. Turner's Amended Complaint includes two counts. The first is titled "Res Ipsa Loquitur (Negligence)" and the second, "Emotional Distress (Negligence)." Doc. 27, at 10–12. As an initial matter, the Court construes Count I as pleading a traditional negligence claim and Count II as pleading negligent infliction of emotional distress. Although they are not titled as such, the essence of Ms. Turner's allegations are best understood this way. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.").[9]

Similarly, because Ms. Turner cites case law discussing negligent infliction of emotional distress claims under Missouri law in defending Count II, *see* Doc. 41, at 14–15, the Court will treat Count II as such, requiring Ms. Turner to plead and prove two additional elements beyond her general negligence claim: "that the defendant should have realized that his conduct involved an unreasonable risk of causing distress" and "that the emotional distress or mental injury [was]

---

[9] Contrary to Ms. Turner's assertion, the doctrine of *res ipsa loquitor* does not provide plaintiffs with an independent cause of action. *Lopez v. Accu-Screen, Inc.*, No. 13-cv-04069-NKL, 2013 WL 12155464, at *1 n.3 (W.D. Mo. June 19, 2013). It is merely an evidentiary rule affecting the way in which plaintiffs can prove breach in the context of a larger negligence claim. *Id.* To the extent Ms. Turner reads *Lopez* to suggest that she states a claim by pleading only the requirements of *res ipsa loquitor*, she misunderstands the law. *Id.* ("The plaintiff is still responsible for articulating the other elements of her negligence claim, namely duty, causation, and injury."). Nor does *res ipsa* save Ms. Turner's complaint here. *See* n.11 *infra* at 26. As explained below, Ms. Turner has not pled enough facts from which the Court could plausibly say *res ipsa* applies, nor does it seem *res ipsa* could apply given Ms. Turner appears to have pled specific acts of negligence. *Carter v. Skelly Oil Co.*, 363 Mo. 570, 575 (1952) (explaining that while *res ipsa* generally has no application on the pleadings, a plaintiff must still prove facts sufficient to invoke *res ipsa*'s applicability and provide notice of the nature of the inference plaintiff intends to rely upon); *see also Fed. Elec. Co. v. Taylor*, 19 F.2d 122, 125 (8th Cir. 1927) ("The *res ipsa loquitur* doctrine . . . can never be invoked when the specific negligence is pleaded.").

medically diagnosable and [was] of sufficient severity so as to be medically significant." *Thornburg v. Fed. Express Corp.*, 62 S.W.3d 421, 427 (Mo. Ct. App. 2001). Accordingly, if Ms. Turner's negligence claim fails, so too does her negligent infliction of emotional distress claim. *Id.*

ILG argues that both counts must fail because Ms. Turner has not pled facts to support a plausible *prima facie* case of negligence. To state a claim for negligence under Missouri law, a plaintiff must plead: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the duty, and (3) the plaintiff suffered an injury proximately caused by the defendant's breach. *Pippin v. Hill–Rom Co.*, Inc., 615 F.3d 886, 889 (8th Cir. 2010) (citing *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 155 (Mo. 2000)). Accordingly, to successfully state a claim, Ms. Turner must plead enough facts to plausibly support each element of her claim. ILG argues that Ms. Turner has failed to sufficiently allege, beyond mere conclusory statements, that ILG owed a duty and was negligent by violating the standard of care imposed by any duty. The Court agrees.

First, Ms. Turner has failed to plausibly allege that ILG owed her a duty. Ms. Turner's primary argument in support of a duty appears to be that the *res ipsa* doctrine relieves her of an obligation to establish duty. As discussed, that is not the law; Ms. Turner must still plausibly allege that ILG owed a duty, even if *res ipsa* applies. *See* n.9, *supra* at 22. Drawing all inferences in her favor, Ms. Turner appears to also suggest that ILG owed her a duty because, under Missouri law, a duty arises "[i]f, under the circumstances, a reasonably prudent person would have anticipated danger and provided against it." *Millard v. Corrado*, 14 S.W.3d 42, 47 (Mo. Ct. App. 1999). Even under this theory, Ms. Turner has failed to plead a plausible case.

As an initial matter, most of Ms. Turner's allegations that could suggest that "a reasonably prudent person would have anticipated danger and provided against it" are conclusory. *See, e.g.*,

Doc. 27, at ¶¶ 15 (Throughout ILG's ownership and operation of the software, the software has had a variety of technical issues); 17 ("ILG was aware of existing software issues before agreeing to remotely administer the August 2020 Florida Bar Exam. ILG failed to use due care."); 23 ("ILG should have realized that acting negligently and undertaking the duty of administering a remote bar examination despite not having capable software for administering a remote bar examination constituted conduct which involved an unreasonable risk of causing severe emotional distress."). That aside, Ms. Turner, at most, alleges only that ILG once before offered a software solution that malfunctioned. Ms. Turner's Amended Complaint indicates that ILG offered software used by the State of Georgia in 2015 and 2016 to facilitate linking bar exam scores to individual test takers. Doc. 27, ¶¶ 21–22 (citations omitted). That software malfunctioned, resulting in some test takers receiving inaccurate test results. *Id.* But nothing in Ms. Turner's Amended Complaint links the software used in Georgia to the software ILG ultimately developed to attempt to offer the Florida Bar Exam. ILG did not administer the Georgia Bar Exam, it only offered software to link bar exam scores to individual test takers.[10] Ms. Turner does not allege that ILG's Georgia software was repurposed for, or otherwise incorporated into, the software ILG developed to administer the Florida Bar Exam for the FBBE. Given ILG's different role in Georgia, a malfunction in that

---

[10] In Georgia, ILG's task was to develop software that offered "(1) a 'personalized information and communications portal . . . for use by Bar Applicants;' and (2) a 'software tool for [the Georgia Office of Bar Admissions'] management and administration of *Applications for Certification of Fitness to Practice Law*, *Bar Examination Applications* and related back-office processes." *Murray v. ILG Techs., LLC*, 798 Fed. Appx. 486, 488–89 (11th Cir. 2020). The Court takes judicial notice of the related Georgia litigation. *See, e.g., PPW Royalty Tr. by & through Petrie v. Barton*, 841 F.3d 746, 753 (8th Cir. 2016) ("We also take judicial notice of the opinions and orders from the prior Willits cases, including the facts of what issues and claims were litigated[.]"), as amended (Oct. 28, 2016); *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 n.2 (8th Cir. 2013) ("We may take judicial notice of the matters filed in this related case."); *Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 996 (8th Cir. 2007) ("[W]e may take judicial notice of proceedings in other courts that relate directly to matters at issue.").

software—used to do a different job—cannot, without more, plausibly suggest that ILG should have foreseen that the software it developed for the Florida Bar would cause harm to Ms. Turner. Nor does Ms. Turner plead facts that otherwise demonstrate that ILG should have anticipated a danger to Ms. Turner. At bottom, while Ms. Turner is entitled to all reasonable inferences and a more liberal pleading standard, beyond ILG's prior unrelated malfunction, Ms. Turner pleads no facts plausibly suggesting a "foreseeable likelihood that [ILG's] acts or omissions [would have] cause[d] harm or injury" to Ms. Turner. *Millard*, 14 S.W.3d at 47. Therefore, Ms. Turner has failed to establish ILG owed a duty.

For similar reasons, Ms. Turner has failed to plausibly plead the second element of a negligence claim, that ILG breached any duty of care. To successfully plead a breach of a duty of care, a plaintiff must allege—and ultimately prove—that a defendant deviated from an established standard of care. *See generally* MAI 11.02. Drawing all inferences in her favor, Ms. Turner argues that ILG was negligent because it failed to act as an ordinarily careful software company would when it agreed to administer the Florida Bar Exam remotely because ILG knew, or should have known, that it would be unable to do so successfully. Doc. 27, ¶ 17. However, Ms. Turner has failed to allege facts to support that theory, or otherwise indicate that ILG acted unreasonably. The only allegations in the Amended Complaint relate to ILG's software malfunction in Georgia. As discussed, Ms. Turner has failed to allege any facts that link ILG's previous software malfunction with the software ILG ultimately developed to administer the Florida Bar Exam. Just as Ms. Turner's limited allegations regarding ILG's previous malfunction cannot, as a matter of law, support a duty of care, they cannot alone plausibly establish that ILG deviated from any standard of care or acted unreasonably. In sum, there is nothing in the Amended Complaint to support that ILG had any indication when it agreed to administer the Florida Bar Exam that it would not

succeed.  Nor does Ms. Turner otherwise explain how ILG acted unreasonably by agreeing to offer services to facilitate the Florida Bar Exam.  *See, e.g., Berry v. Union Pac. R.R. Co.*, 22-cv-331, 2022 WL 2292884, at *6 (S.D. Tex. June 24, 2022) (finding that complaint failed to plausibly plead breach of a duty of care because plaintiff failed to specifically explain how he believed the defendant failed to act reasonably, there, how the plaintiff failed to provide adequate warnings).[11] Here, Mr. Turner has done no more than suggest misconduct by ILG is possible; that is not enough. *Iqbal*, 129 S.Ct. at 1950 ("[When a complaint does] not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—that the pleader is entitled to relief.").

Furthermore, the larger context in which ILG operated is not enough, without more, to plausibly suggest ILG acted unreasonably.  Even if ILG thought that developing appropriate software would be difficult, and even if certain of ILG's competitors chose not to proceed when ILG did, these facts alone cannot establish that ILG was negligent.  After all, technology companies are often called upon to innovate and find solutions to novel and complex challenges.

---

[11] Ms. Turner attempts to rely on the *res ipsa* doctrine to prove breach.  Ms. Turner must still plead enough facts to plausibly suggest that it applies.  *See generally Carter*, 363 Mo. at 575.  She has not.  *See Giesing v. Schindler Elevator Corp.*, 2:21-CV-4181-NKL, 2022 WL 4072859, at *3 (W.D. Mo. Sept. 2, 2022) (discussing the general requirements of *res ipsa* under Missouri law). And because it appears that Ms. Turner attempts to plead specific negligence—by alleging that ILG was negligent for the specific act of agreeing to enter an agreement with the FBBE)—she cannot.  In Missouri, *res ipsa* cannot be used to infer negligence when the plaintiff pleads the real or precise cause of an injury.  *See Rea v. St. Louis-San Francisco Railway Co*., 411 S.W.2d 96, 99 (Mo. 1967); *Williams v. St. Louis Public Service Co*., 363 Mo. 625, 633 (Mo. 1952).  Here, Ms. Turner pleads that her injuries were directly caused by ILG's negligent decision to offer defective software, which directly caused the cancellation of the Florida Bar Exam; there is no reason for the jury to rely on *res ipsa*.  *See generally Rea*, 411 S.W.2d at 99 ("The plaintiff is bound by his evidence in a *res ipsa* case just as he is in an ordinary negligence action and cannot in effect say to the jury, 'I have shown you exactly how this collision occurred but you are, nevertheless, still at liberty to speculate and presume that it may have happened some other way.'"); *see also* Doc. 27, ¶¶ 14, 16.

Ms. Turner must plead facts to plausibly suggest that, in this larger context, ILG did not act reasonably—that it did not act as a reasonable software company would—by agreeing to administer the Florida Bar Exam. Ms. Turner does not plead facts, beyond that ILG once before failed in an unrelated task in Georgia, suggesting that ILG's decision was unreasonable or deviated from the standard of care, and therefore, even assuming ILG owed a duty, Ms. Turner's Amended Complaint must be dismissed for failing to plausibly plead that ILG breached any duty.

### i. Whether Ms. Turner's Motion for Leave to File a Second Amended Complaint Should be Granted

While this Motion was pending, Ms. Turner also sought leave to file a Second Amended Complaint. Doc. 57. That Motion is DENIED. Ms. Turner failed to show good cause to justify her Second Amended Complaint months after the deadline for amendment has passed. The Court ordered that any motion to amend the pleadings be filed on or before June 23, 2022. Doc. 50. Ms. Turner filed her Motion on August 25, 2022, almost two months later. Accordingly, Ms. Turner must show good cause. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008). Ms. Turner seeks to file her Second Amended Complaint because, while preparing for mediation, she decided she wanted to include additional allegations regarding ILG's duty. Ms. Turner knew ILG's arguments related to duty, raised in its Rule 12(b)(6) Motion to Dismiss, for months and did nothing. Ms. Turner does not allege that she discovered new information that was previously unavailable to her, or that she was otherwise precluded from making these allegations within the Court's original timeline. Accordingly, Ms. Turner has failed to show good cause.

For the avoidance of doubt, the Proposed Second Amended Complaint would not have remedied the deficiencies the Court has identified. While the Proposed Second Amended Complaint more clearly establishes Ms. Turner's theory of ILG's negligence, it does not plead any additional facts substantiating Ms. Turner's theory of ILG's duty or breach.

At bottom, to plausibly allege duty, Ms. Turner must allege some facts that show "a foreseeable likelihood that particular acts or omissions will cause harm or injury." *Millard v. Corrado*, 14 S.W.3d 42, 47 (Mo. Ct. App. 1999). Ms. Turner has not alleged anything new in her Proposed Second Amended Complaint to do that. Just as before, her allegation that ILG previously failed in Georgia—at a different task—is not enough.

For the same reason, the Proposed Second Amended Complaint fails to plausibly plead that ILG breached any duty to Ms. Turner by deviating from a standard of care. Ms. Turner pled no additional facts in her Proposed Second Amended Complaint suggesting that ILG failed to act as a reasonably prudent software company would in its situation. That an unrelated ILG software had failed in the past and that ILG—and all bar exam software companies—faced an unprecedented challenge in administering bar exams during the COVID-19 pandemic are not enough, without more, to establish that ILG acted unreasonably by agreeing to administer the Florida Bar Exam.

### ii.     Whether the Court Should Dismiss With Prejudice

The Court will dismiss Ms. Turner's Amended Complaint without prejudice. The Court may dismiss Ms. Turner's claim with prejudice only when amendment would be futile. *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021). Amendment is generally futile when it would not permit a claim to survive a future Rule 12(b)(6) motion or when the identified defect cannot otherwise be remedied through more specific pleading. *See Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 719–20 (8th Cir. 2014). However, generally, "[u]nless it is absolutely clear that no amendment can cure the defect . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("A *pro se* complaint should not be dismissed without the Court's granting leave to amend at least

once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotation marks and brackets omitted).  The Court cannot definitively say amendment is futile at this time.  Therefore, dismissal must be without prejudice.

The Court cautions Ms. Turner to realistically consider the deficiencies identified by the Court before she again attempts to file an amended complaint.  As an initial matter, Ms. Turner has already had two bites at the apple.  The Court will permit one more, but if Ms. Turner fails to address the deficiencies identified by the Court, dismissal will then be with prejudice.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (a district court may deny leave to amend for, among other reasons, "repeated failure to cure deficiencies by amendments previously allowed ... [and] futility of amendment"); *Thomas v. Thurston*, 18-CV-4007, 2019 WL 2420056, at *2 (S.D.N.Y. June 10, 2019) (warning *pro se* plaintiff that if his amended complaint failed to remedy the deficiencies identified by the court's opinion, his action would be dismissed with prejudice).

Furthermore, Ms. Turner—even as a *pro se* litigant—is not insulated from the reach of Federal Rule of Civil Procedure 11.  *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (noting that pro se litigants are not excused from complying with procedural law).  This is especially so given Ms. Turner is a law school graduate.  *See generally Emrit v. Sec'y of Hawaii*, 17-cv-00504, 2018 WL 264851, at *2 (D. Haw. Jan. 2, 2018) (recognizing that expectations of *pro se* plaintiff were higher given he was knowledgeable about federal court filing and pleading responsibilities, given numerous prior actions); *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("In some circumstances, such as when a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience . . . it falls well within a district court's discretion to lessen the solicitude that would normally be afforded [to a *pro*

se litigant].").  If Ms. Turner chooses to file a Second Amended Complaint, the Court will fully enforce the requirements of Rule 11—specifically that by pleading the additional facts necessary, she certifies that "to the best of . . . [**her**] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the "factual contentions have evidentiary support[.]" Fed. R. Civ. P 11(b)(3) (emphasis added); *see also Moore v. Rosenblatt*, 15-cv-8021, 2016 WL 6783341, at *5 (C.D. Cal. Oct. 11, 2016) (warning a *pro se* plaintiff that it appeared his complaint violated Fed. R. Civ. P. 11 because his allegations appeared to be supported by facts that he could not personally know or support) (subsequent history omitted); *Gordon v. Target Corp.*, 20-CV-9589, 2022 WL 836773, at *19 (S.D.N.Y. Mar. 18, 2022) (warning plaintiff to only file a second amended complaint if she has a good faith basis to do so).[12]

Ms. Turner should only file a Second Amended Complaint if she can plead the additional facts necessary to support her theory of ILG's duty and breach of that duty.  The Court cautions Ms. Turner to carefully evaluate any additional factual allegations she may make against the requirements of Rule 11.  *Carman*, F.3d at 1382 (stating that if the Court finds that Rule 11 has been violated, "it must impose a sanction.").  Such a complaint, if any, must be filed within 14 days of this Order.

### III.   CONCLUSION

For the reasons discussed above, ILG's Motion to Dismiss, Doc. 32, is GRANTED in part, and Ms. Turner's Amended Complaint is DISMISSED without prejudice.  Furthermore, ILG's

---

[12] *See also Thaut v. Hsieh*, 15-CV-0590, 2015 WL 4508779, at *16 (E.D. Cal. July 24, 2015) (warning pro se plaintiffs that they should not pursue claims if, given the deficiencies identified by the court, they "cannot in good faith allege facts" necessary to support their claims); *Robinson v. City of Las Vegas*, 22-CV-00174, 2022 WL 656364, at *4 (D. Nev. Mar. 4, 2022) (warning plaintiff that any amendment in response to deficiencies identified by the court must be truthful and have good faith evidentiary support).

Motion to Strike and for Sanctions, Doc. 52, is DENIED, however Ms. Turner's unauthorized declarations, Doc. 47; Doc. 48, are hereby STRICKEN.  Ms. Turner's Motion for Leave to File an Amended Complaint, Doc. 57, is DENIED.




Dated: 9/28/2022                                    s/ Nanette K. Laughrey
Jefferson City, Missouri                          NANETTE K. LAUGHREY
                                                          United States District Judge